IN THE MATTER OF: Christian Diane Allred, DOB: 10-10-88

No. COA94-1160

(Filed 4 June 1996)

1. **Evidence and Witnesses § 569 (NCI4th); Parent and Child § 99— termination of parental rights—evidence of neglect of other children—admissibility**

In a proceeding for termination of parental rights, respondent was not prejudiced by the admission of evidence of prior court orders in which respondent's four older children had been adjudicated to be neglected, since the situation with regard to the child in question was similar to the situations with the other children; the prior orders were evidence of relevant circumstances

and events prior to this order of adjudication which had a bearing upon the probability of a repetition of neglect; and the trial court made an independent determination of whether neglect authorizing termination of parental rights existed at the time of the termination hearing and did not treat the prior orders and adjudications of neglect as determinative of the ultimate issue.

**Am Jur 2d, Parent and Child §§ 34, 35.**

**Validity of state statute providing for termination of parental rights. 22 ALR4th 774.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

2. **Parent and Child § 101 (NCI4th)— neglected child—sufficiency of evidence—termination of parental rights proper**

The evidence was sufficient to support the trial court's findings that a child was neglected, and the trial court did not err in terminating respondent's parental rights, where the evidence tended to show that the child in question had multiple handicaps and special needs; respondent failed to attend many of the important medical appointments scheduled to help her provide for the child's needs; she did not pay adequate attention to the child or handle the child appropriately during supervised visits; respondent failed to accept the advice of social workers and others for the proper care of the child; and psychological testing showed that respondent was highly unlikely to significantly change her behavior.

**Am Jur 2d, Parent and Child §§ 34, 35.**

**Validity of state statute providing for termination of parental rights. 22 ALR4th 774.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

Appeal by respondent from order entered 2 December 1993 by Judge Michael A. Sabiston in Randolph County District Court. Heard in the Court of Appeals 17 October 1995.

Respondent Bonnie Marie Styles Allred is the mother of Christian Diane Allred, born 10 October 1988. Christian was born prematurely

**IN RE ALLRED**

[122 N.C. App. 561 (1996)]

and with myotonic dystrophy. She remained hospitalized until 9 December 1988. Christian was readmitted to the hospital on 28 December 1988 after suffering from a fever and not eating properly. She was released to her mother on 31 December 1988.

On 2 January 1989, aged two and one-half months, Christian was again admitted to the hospital, this time suffering from a spiral fracture of her right arm. According to later expert testimony at the abuse and neglect hearing, the arm could only have been broken in that manner by an external twisting motion. Christian was placed in the custody of the Department of Social Services of Randolph County (DSS) on 3 January 1989 and has remained in foster care since that date.

After a hearing on 23 January 1989, the court entered an order determining Christian to be an abused child as defined by N.C. Gen. Stat. § 7A-517(1)(a) and a neglected child as defined by N.C. Gen. Stat. § 7A-517(21). The court held periodic review hearings from July 1989 through November 1992. DSS filed a petition to terminate the parental rights of respondent and the child's father on 16 October 1990, and filed an amended petition to terminate on 14 January 1991. The court declared a mistrial in the hearings on the petition. DSS filed a second petition to terminate the parental rights of the father alone, and after a hearing, his rights were terminated on 13 May 1993. DSS filed a second petition to terminate respondent's rights on 24 September 1992. After a series of hearings from February to April 1993, the court entered an order dated 2 December 1993 terminating respondent's parental rights. From this order, respondent appeals *in forma pauperis*.

*Theresa A. Boucher for petitioner-appellee.*

*J. Jane Adams for respondent-appellant.*

*William Mathers for Guardian ad Litem appellee.*

McGEE, Judge.

[1] Respondent first argues the trial court erred by admitting into evidence numerous court orders concerning her four older children. These orders reflect that all four children had been adjudicated to be neglected and give the facts surrounding the adjudications. Respondent never regained custody of these children. Respondent's first husband gained custody of two of the children, one child was legally emancipated, and the fourth child died in a nursing home

while in the custody of DSS. Respondent contends this evidence should have been excluded under N.C.R. Evid. 404(b). We disagree.

Our Supreme Court held, in *In re Ballard*, 311 N.C. 708, 319 S.E.2d 227 (1984), that "evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights." *Ballard*, 311 N.C. at 715, 319 S.E.2d at 232.

As the answer to [whether parental rights should be terminated] must be based upon the then existing best interests of the child and fitness of the parent(s) to care for it *in light of any evidence of neglect and the probability of a repetition of neglect*, the trial court must admit and consider *all evidence* of relevant circumstances or events which existed or occurred *either before or after* the prior adjudication of neglect.

*Ballard*, 311 N.C. at 716, 319 S.E.2d at 232-33 (emphasis added). Although some of the orders were dated as far back as 1979, many of the prior orders admitted in this case described events and circumstances immediately before and after Christian's birth. All of the orders detailed various conditions which were also present in the order adjudicating Christian to be neglected and in the orders of her subsequent review hearings, including filthy living conditions, improper care and supervision, leaving medicines and poisons within the children's reach, failure to properly administer medicines, involvement in unstable relationships with men, etc. Also, one of the older children, like Christian, suffered physical handicaps. Because of the similarities to Christian's situation, we find these prior orders to be evidence of relevant circumstances and events prior to the order of adjudication which bear upon the probability of a repetition of neglect, thereby making the orders admissible.

We recognize that *Ballard* and the cases which followed it, *see, eg.*, *In re Beck*, 109 N.C. App. 539, 428 S.E.2d 232 (1993); *In re Parker*, 90 N.C. App. 423, 368 S.E.2d 879 (1988), dealt with prior acts of abuse of the same child involved in the termination proceeding. However, for the same reasons stated in *Ballard*, a respondent will not be prejudiced in a properly conducted hearing by the admission of evidence of the prior abuse of another of respondent's children. *See Ballard*, 311 N.C. at 715-16, 319 S.E.2d at 232. The trial court must make an independent determination of whether neglect authorizing termination of parental rights exists *at the time of the termination hearing*

and may not treat a prior adjudication of neglect as determinative of the ultimate issue. *Ballard*, 311 N.C. at 716, 319 S.E.2d at 233.

When admitting evidence of prior neglect, the court must also consider any evidence of changed conditions since the prior neglect. *Ballard*, 311 N.C. at 715, 319 S.E.2d at 232. Therefore, since parents have a full opportunity to present all evidence favorable to them relating to all relevant periods before or after the prior neglect, the admission of evidence of the prior neglect is not unfairly prejudicial. *Ballard*, 311 N.C. at 716, 319 S.E.2d at 233. Here, respondent did in fact present evidence of some changes made since the adjudication of neglect, and these changes are noted in the termination order. The trial court properly admitted the evidence of prior neglect. Further, the court did not rely solely upon this evidence as being determinative of the issue. We find no prejudice to the respondent.

[2] Respondent's remaining arguments contend the trial court's conclusions are not supported by the facts and the court erred as a matter of law in terminating her parental rights. The trial court found that: 1) Christian was an abused or neglected child; and 2) that respondent had left Christian in foster care for more than eighteen months (now twelve) without showing reasonable progress under the circumstances to the diligent efforts of DSS to strengthen the parental relationship or to make or follow through with constructive planning for the child's future. Both are grounds for termination of parental rights under N.C. Gen. Stat. § 7A-289.32(2) and N.C. Gen. Stat. § 7A-289.32(3) respectively. While the record supports both findings, since the existence of only one of the statutory grounds is enough to enable the court to terminate parental rights, *In re Tyson*, 76 N.C. App. 411, 415, 333 S.E.2d 554, 557 (1985), we only address the issue of neglect.

In a termination proceeding, the appellate court should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law. *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982), *appeal dismissed*, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983). To support its conclusion that Christian is an abused or neglected child, the trial court made, among others, the following findings of fact:

7. The juvenile, Christian Diane Allred, was adjudicated to be an abused and neglected juvenile on January 23, 1989. The Court's findings in the adjudication hearing details [sic] that the infant juvenile was allowed to live in "filthy and intolerable" conditions,

IN RE ALLRED

[122 N.C. App. 561 (1996)]

the respondent parents failed to provide that degree of care required for the special medical needs for this juvenile resulting in decreased weight gain and the infant juvenile sustained a spiral fracture of her arm which was caused by someone forcefully twisting her arm. The Court found that respondent mother, Mrs. Bonnie Allred was on guard and present at the time the juvenile's arm was broken.

8. Since the adjudication hearing on January 23, 1989, Mrs. Allred has made some changes in her living circumstances. Mrs. Allred moved from the home which she lived at the time of the removal of the juvenile. Mrs. Allred moved into 3 different homes all of which were approved by [DSS] for limited visitation with the juvenile. Mrs. Allred's most recent home was observed to be generally acceptable; however, in 1992 roaches and maggots were observed in Mrs. Allred's home during periods of visitation with the juvenile.

9. Mrs. Allred had weekly 5 hour supervised visits with the child in her home from April 1992, to the date of this hearing. Mrs. Allred has been observed during periods of visitation with the juvenile, Christian Allred. Mrs. Allred displays very little patience with the child, has failed to watch the child closely enough, and exhibited some rough handling of the child during meal time. Mrs. Allred has also been unsteady while handling and carrying Christian Allred, [and] has been seen to drop the child on the couch or bed while attempting to change her diaper. On one occasion, Mrs. Allred failed to remove medication which was left in the reach of the juvenile.

10. Mrs. Allred entered into several service agreements with [DSS] which provided that she would attend all medical appointments for the juvenile, Christian Allred. Mrs. Allred was given a calendar to list all regularly scheduled appointments and called about all other appointments scheduled in the event of the child's illness. The purpose of this provision was to provide Mrs. Allred every opportunity to learn about the special needs of the child and how to care for her. Mrs. Allred was never able to arrange transportation in order to attend appointments which were scheduled for the child's illness. Mrs. Allred did attend approximately 6 of 11 scheduled appointments from August 1992 to February 1993.

11. Ms. Elaine Garner, social worker, with [DSS] has been assigned to the case of Christian Diane Allred since February 20, 1989, but had been working with Ms. Bonnie Allred regarding the return of her son, David Styles since 1988. Since 1988, Ms. Garner has seen no significant change in Mrs. Allred's parenting skills. Mrs. Allred does not pay adequate attention to her child's needs, is unwilling to accept advice regarding Christian and is very self-centered.

16. Dr. John Edwards, Clinical Psychologist, conducted a psychological evaluation of Mrs. Bonnie Allred in February 1993. The test data clearly suggests the probability that she has a Borderline Personality Disorder. The test data clearly suggests the prognosis for a significant change in Mrs. Allred to be very poor.

17. Based on Dr. Edwards' evaluations, reports and testimony the Court finds as a fact that . . . Mrs. Allred possesses many of the characteristics of a borderline personality disorder and also has characteristics of a dependent personality disorder. Mrs. Allred is a very dependent individual but she resents being dependent on others and, therefore, will not cooperate with those she needs to give her help. Mrs. Allred is very self-centered. Mrs. Allred finds it exceedingly difficult when extreme demands are made on her by needful people; and it is likely that she will become highly frustrated, very angry and either withdraw or act out in some fashion. The test data clearly suggest the prognosis for a significant change in Ms. Allred to be very poor . . . .

18. It is very unlikely that Mrs. Bonnie Allred would be able to comfortably anticipate and respond to the emotional, health and safety needs of Christian Allred.

19. Dr. Edwards opined that based on his evaluation and interviews with Mrs. Allred and his review of her history of neglecting this child and her other children, that the probability that she would neglect Christian Allred, a multi-handicapped child, again would be very high.

Respondent did not except to any of these findings, and they are presumed to be correct and supported by the evidence. *Moore*, 306 N.C. at 404, 293 S.E.2d at 133. Also, a review of the record and transcript shows each of these findings are supported by clear, cogent and convincing evidence. They are based upon the orders filed in the case, along with the testimony of: 1) two social workers who worked with

respondent; 2) Christian's foster mother; and 3) a psychologist who interviewed and tested the respondent. Respondent contends there was also contrary evidence, such as the overall improvement in respondent's living conditions. While respondent did provide some contrary evidence, the trial court's findings are adequately supported by the evidence and are binding on this Court.

We must next determine whether the findings of fact support a conclusion that Christian was a neglected child at the time of the hearing. As our Supreme Court has said:

Where the evidence shows that a parent has failed or is unable to adequately provide for [her] child's physical and economic needs, whether it be by reason of mental infirmity or by reason of willful conduct on the part of the parent, and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected.

*In re Montgomery,* 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). In this case, the evidence shows that over the four year period of time between DSS' taking custody of Christian and the termination hearing, even though she made some improvements, respondent failed to improve her parenting skills to a level of appropriate care. This supports a finding of neglect. *See Smith v. Alleghany County Dept. of Social Services,* 114 N.C. App. 727, 443 S.E.2d 101, *disc. review denied,* 337 N.C. 696, 448 S.E.2d 533 (1994) (even though the mother showed improvements in her psychological condition and living conditions, finding of neglect and termination of parental rights held proper where probability of repetition of neglect was great).

Although Christian is a multi-handicapped child with special needs, respondent failed to attend many of the important medical appointments scheduled to help respondent provide for the child's needs. Respondent did not pay adequate attention to the child or handle the child appropriately during supervised visitations. Respondent failed to accept the advice of social workers and others for the proper care of Christian. Because of this, respondent was unable to care for the child's special needs. Psychological testing also showed respondent is highly unlikely to significantly change her behavior. The psychologist who interviewed and tested respondent testified the likelihood respondent would neglect Christian again would be very high. This evidence showed respondent was not able to properly provide for Christian's physical needs and both failed, and appeared unable,

to correct these problems within a reasonable time. Therefore, the court properly found Christian to be a neglected child.

Once DSS has met its burden of proof in showing the existence of one of the grounds for termination, as it did in this case, the decision of whether to terminate parental rights is within the trial court's discretion. *In re Parker*, 90 N.C. App. 423, 430, 368 S.E.2d 879, 884 (1988). Based upon the facts, we find no abuse of that discretion. Therefore, the order terminating the parental rights of respondent to Christian Diane Allred is affirmed.

Affirmed.

Judges MARTIN, John C. and JOHN concur.