TIMMONS-GOODSON, Judge.
Ms. M. ("respondent") appeals an order terminating her parental rights as the mother of M.R.M., M.A.K. and J.S.K. In March of 1999, the minor children were placed in the legal and physical custody of the McDowell County Department of Social Services ("DSS"). DSS subsequently filed a petition to terminate the parental rights of respondent alleging that respondent: (1) neglected the minor children (N.C. Gen. Stat. § 7B-1111(a)(1)); (2) willfully left the children in foster care or placement outside the home for more than 12 months without showing to the satisfaction ofthe court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile (N.C. Gen. Stat. § 7B-1111(a)(2)); and (3) failed to pay a reasonable portion of support for the minor child for a continuous period of six months after the minor child had been placed in the custody of DSS (N.C. Gen. Stat. § 7B-1111(a)(3)). Respondent's parents moved to intervene in the termination of parental rights proceeding. The trial court denied their motion to intervene except for the limited purpose of being allowed to present evidence at the dispositional phase of the termination of parental rights hearing in the event respondent chose not to present the evidence that otherwise would be represented by the maternal grandparents. On 6 August 2002, the trial court terminated respondent's parental rights based on the statutory grounds set forth in sections 7B-1111(a)(1) and (a)(2). Respondent appeals from the order terminating her parental rights.
A termination of parental rights proceeding is conducted in two stages: (1) the adjudication phase, which is governed by N.C.G.S. § 7B-1109 and (2) the disposition phase, which is governed by N.C.G.S. § 7B-1110. See In re Brim, 139 N.C. App. 733, 738, 535 S.E.2d 367, 370 (2000). During the adjudication stage, petitioner has the burden of proof by clear, cogent, and convincing evidence that one or more of the statutory grounds set forth in N.C.G.S. § 7B-1111 for termination exists. See N.C. Gen. Stat. § 7B-1109(e)-(f) (2003). The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent,and convincing evidence and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000)(citing In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996)), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
If petitioner meets its burden of proof that grounds for termination exist, the trial court then moves to the disposition stages and must consider whether termination is in the best interests of the child. See N.C. Gen. Stat. § 7B-1110(a) (2003). The trial court has discretion, if it finds by clear, cogent, and convincing evidence that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the best interests of the child. In re Blackburn, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001). The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. In re Brim , 139 N.C. App. at 744, 535 S.E.2d at 373.
Respondent contends the trial court's conclusion that she neglected her children is not supported by sufficient, competent evidence or findings of fact. We find the evidence sufficient to support the order terminating parental rights and affirm the decision of the trial court.
In this case, the trial court terminated respondent's parental rights under 7B-1111(a)(1) based upon a finding that the minor children were "neglected juvenile[s]" within the meaning of N.C. Gen. Stat. § 7B-101. Section 7B-101(15) defines "neglected juvenile" as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law . . . .
N.C. Gen. Stat. § 7B-101(15)(2003). To prove neglect in a termination case, there must be clear, cogent, and convincing evidence (1) the juvenile is neglected within the meaning of N.C.G.S. 7B-101(15), and (2) "the juvenile has sustained `some physical, mental, or emotional impairment . . . or [there is] a substantial risk of such impairment'" as a consequence of the neglect. In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (quoting In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993)).
"A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997)(citing In re Ballard, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984)). "[T]ermination of parental rights for neglect may not be based solely on past conditions which no longer exist." Id. "[A] prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." Ballard, 311 N.C. at 713-14, 319 S.E.2d at 231. If the child has been removed from the parents' custody before the termination hearing, and thepetitioner presents evidence of prior neglect, including an adjudication of such neglect, then "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id. at 715, 319 S.E.2d at 232. Thus, where there is no evidence of neglect at the time of the termination proceeding . . . parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents.
Reyes, 136 N.C. App. at 815, 526 S.E.2d at 501. The trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard. Allred, 122 N.C. App. at 569, 471 S.E.2d at 88.
In support of its conclusion that respondent's parental rights should be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), the trial court entered the following pertinent findings of fact:
14. By order entered May 4, 1999, the minor children were adjudicated to be neglected juveniles as defined by N.C. Gen. Stat. § 7A-517(21), now recodified as N.C. Gen. Stat. § 7B-101(15). . . .
15. At the adjudication and dispositional hearing held May 4, 1999, the respondent mother stipulated to the following, among other facts:
(a) The respondent mother suffers from a medical condition of chronic migraine headaches, and has been receiving Social Security Disability Benefits since November, 1996. The respondent went through Toms Rehabilitation Hospital Pain Program in January, 1998 in order to manage her pain fromthe migraine headaches. In the course of being treated for her migraine headaches, the respondent mother has been prescribed various narcotic medicines by various physicians.
(b) In an effort to control her migraine headaches, the respondent mother has developed a dependency to narcotic medications, and the drug dependency coupled with her migraine headaches has created situations, including times during January and February, 1999, when the respondent did not provide proper care and supervision for the minor children.
(c) The respondent mother is in need of the development of and adherence to a long-term program to control her dependency on narcotic medication so that said respondent will be able to be attentive to the needs of the minor children.
. . . .
(f) In or around January and February, 1999, the minor children were not receiving proper care and supervision due to the drug dependency of the respondent mother, and were neglected juveniles as defined by N.C. Gen. Stat. § 7A-512(21).
. . . .
16. Following a review hearing held September 21, 1999, and based upon the consent of the parties, the Court found that the social worker had secured a placement for the respondent mother at an inpatient treatment facility but that said respondent had not followed through with the steps necessary to attend the facility. The respondent mother had visited emergency rooms and had been given narcotic medication on June 8, 1999, July 29, 1999, August 23, 1999 and September 13, 1999, and had been given Demerol at St. Joseph's emergency room on August 4, 1999. Among other things, the Court ordered that in the event Dr. Acree should recommend it, the respondent without delay should submit herself to inpatient treatment at Hebron Colony or such other facility as may be arranged by the Department of Social Services, participate in parenting classes, maintain a residence andkeep her household bills current.
. . . .
20. A permanency planning review hearing was held June 5, 2000, where evidence was presented by all parties. Among other findings, the Court found by clear, cogent and convincing evidence the following:
. . . .
(c) The Court's prior order of January 14, 2000, relieved the McDowell County Department of Social Services of the duty to make reasonable efforts to reunify the minor children with the respondent mother, but established a concurrent permanent plan to continue to consider reunification of the children with the respondent mother, while also considering the placement of custody and guardianship of the minor children with relatives. The Court order stated that the respondent mother was being allowed an opportunity to submit herself to inpatient treatment at Mt. Hebron Colony and demonstrate that she is free from any addiction to narcotic medicine and capable of providing proper care, supervision and discipline to the minor children.
(d) Since the review hearing held January 14, 2000, the McDowell County Department of Social Services, although relieved of the requirement to work toward reunification with the respondent, continued to assist the respondent by obtaining information on treatment programs that would be free to the respondent. The social worker found three programs that would be available to the respondent, all of the programs being free, although lasting six months. Upon giving the information to the respondent, she expressed concern about the length of the programs, and did not follow-up to enroll at any of the programs. The respondent mother has continued the use of narcotic medicine since January 14, 2000, having received narcotics on, at least, the following occasions: January 26, 2000, received Stadol at Memorial Mission Hospital; February 7, 2000, received Stadol at MemorialMission Hospital; February 10, 2000, received Stadol on two separate occasions at Memorial Mission Hospital and received a prescription for said drug; on February 20, 2000, received Nubain at Sisters of Mercy; on March 15, 2000, received Stadol at St. Joseph's Hospital on two separate occasions; on 28 March, 2000, received Stadol at St. Joseph's Hospital; on April 23, 2000, received Nubain at Sisters of Mercy; on May 2, 2000, received Nubain at Sisters of Mercy.
In addition to the above occasions where the respondent received Stadol, there [were] several documented visits by the respondent to hospitals where she was seeking narcotic medicine, but was refused. The Asheville Pain Clinic noted on a visit April 10, 2000, that Ms. Moore had used a bottle of Stadol over 24 hours and 30 tablets of Fiorinal over one weekend.
(e) Although the court order of January 14, 2000, suspended the respondent mother's visitation with the minor children and gave the respondent an opportunity to seek treatment for her substance abuse prior to this review hearing, the respondent has failed to take advantage of the free treatment programs offered to her by the Department of Social Services.
. . . .
21. The respondent mother testified that since June, 2000, she has attempted to gain admittance to treatment programs at Charter Hospital in South Carolina, and Bridgeway in North Carolina, without success. The respondent mother admitted that since June, 2000, when social worker, Nicole Jackson, took over the case, she has not requested the assistance of the Department of Social Services in securing any type of treatment.
. . . .
24. Following the permanency planning hearing in June, 2000, the social worker contacted numerous medical providers in Western North Carolina, but found few medical records for Ms. [M]. In September, 2001, Ms. [M.] toldthe social worker she was not using narcotic medicine. The respondent mother told the social worker she was starting treatment at Blue Ridge Mental Health in Asheville, N.C., and would have her first appointment in September, 2001. Ms. [M.] advised the social worker that she was having a psychological evaluation by Bradford Owen at Blue Ridge Mental Health.
25. Ms. [M.] quit her treatment at Blue Ridge Mental Health after eight sessions. In February, 2002, Bradford Owen forwarded a copy of his psychological evaluation of Ms. [M.] to all parties. The psychological evaluation was completed following sessions with Ms. [M.] on September 13, 2001 and November 1 , 2001, and was admitted into evidence by stipulation and without objection of any party. Mr. Owen, in his psychological evaluation, concluded that Ms. [M.] has the personality characteristics, medical history, and familial addiction/incest experience that warrant a diagnosis of Opiate Dependence. The psychologist recommended and stated his opinion that Ms. [M.] must fully complete a long-term, intensive substance abuse treatment program that has an equally intensive personality disorder treatment component before being placed in any child care role. Furthermore, the psychologist recommended medical oversight of Ms. [M.] by psychiatrists specialized in treating addicted clients in order to map out a strategy of opiate withdrawal and weigh the need for the use of any other medications given her drug dependence.
26. Following the psychological evaluation of Ms. [M.], Ms. [M.] did not participate in either an out-patient treatment program or in-patient treatment program with regard to her narcotic dependence.
27. In January, 2002, the social worker learned that Ms. [M.] had been obtaining medical treatment in Tennessee. Upon inquiry, the social worker found extensive medical records dating from August, 2000 through October, 2001, from the Tacoma Adventist Hospital and Loughlin Memorial Hospital, both facilities located in Greenville, Tennessee. The medical records from these facilities wereintroduced into evidence without objection and the records show extensive prescriptions and use of narcotic medicines by Ms. [M].
28. The respondent mother's visitation with the minor children was suspended by order of the Court entered following hearing on January 14, 2000, until the respondent mother submitted herself to an inpatient treatment program and demonstrated that she was free of addiction to narcotic drugs and capable of providing proper care and supervision to the minor children. However, the respondent mother has chosen to continue to seek drugs as evidenced by medical records introduced by the petitioner showing continued drug use through at least October, 2001. The failure of the respondent mother to attend an inpatient treatment program and to continue with her drug seeking behavior evidences a willfulness by the respondent mother to forego her visitation and contact with the minor children in order to continue her drug dependence.
Respondent has excepted to only finding number twenty-eight, thus, the remaining findings are presumed to be correct and supported by the evidence. In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982). A review of the record and transcript shows each of the trial court's findings are based upon orders entered in the case and testimony from DSS social workers Brian Price and Nicole Jackson. The trial court properly considered both evidence of neglect by respondent prior to losing custody of the children (including the prior adjudication of neglect) as well as evidence of conditions since that time showing a likelihood of neglect in the future.
At the termination proceeding, respondent had the opportunity to present evidence relating to before and after the adjudication of neglect. Respondent testified, and presented some contraryevidence, such as she was not currently taking a narcotic for her migraine headaches and that her migraines had "gotten noticeably better." Respondent's mother confirmed that respondent was not taking addictive medication for her migraines. However, in considering all of the circumstances, the evidence of neglect existing prior to removal of the children from the home and the conduct of the respondent while the children were in foster care support the conclusion of the trial court that at the time of the termination proceeding, the children were neglected under N.C. Gen. Stat. § 7B-1111. We therefore conclude that the trial court's findings of facts were based on clear, cogent, and convincing evidence and thus, the trial court properly found that respondent had neglected the minor children. See In re Leftwich, 135 N.C. App. 67, 72, 518 S.E.2d 799, 803 (1999) (affirming termination of parental rights where respondent mother had made no meaningful progress in eliminating the conditions that led to the removal of her children, including failing to enroll in an intensive treatment program).
Respondent also assigns error to the trial court's finding and conclusion that it was in the best interest of the child to terminate respondent's parental rights. Respondent challenges finding of fact number forty-one, which states that the children's contact with the maternal grandparents "does not appear to be in the children's best interest." Respondent points to the trial court's 29 July 2002 review order, which found that it was in the minor children's best interest that the maternal grandparents havevisitation with the children as evidence the trial court abused its discretion. However, the evidence presented by the petitioner supports the trial court's conclusion that termination of respondent's parental rights is in the children's best interest. The record shows that respondent failed to comply with court orders, and to make adequate improvement in the issues that led to the children's removal. Respondent continued her dependency on narcotics after her children were removed from her custody. The record further shows, contrary to respondent's assertion, contact with the maternal grandparents was not in the children's best interest. At the dispositional stage, the foster parent of M.A.K. and J.S.K. testified that the children seemed "more agitated" following visits with the maternal grandparents. The guardian ad litem testified that J.S.K. told the guardian that he was opposed to having visitation with the maternal grandparents. After the conclusion of the dispositional testimony, the trial court interviewed the minor children and found that J.S.K. did not wish to have any contact with his maternal grandparents and that M.A.K. was confused regarding her desire to have contact with the maternal grandparents. There is competent evidence to support the trial court's findings of fact and conclusions of law. Moreover, there is nothing in the record which requires us to upset the exercise of the trial court's discretion. King v. Allen, 25 N.C. App. 90, 92, 212 S.E.2d 396, 397 (1975). Thus, this assignment of error is overruled.
Respondent has also challenged the trial court's finding offact number twenty-eight, which is the basis for the trial court terminating respondent's parental rights under 7B-1111(a)(2). Because this Court determined the trial court properly terminated respondent's parental rights under section 7B-1111(a)(1), "we need not discuss the remaining . . . grounds for termination asserted by petitioner." In re Brim, 139 N.C. App. 733, 743, 535 S.E.2d 367, 373 (2000).
In conclusion, we find no prejudicial error in the proceeding to terminate respondent's parental rights. The order entered by the trial court is affirmed.
Affirmed.
Judges CALABRIA and LEVINSON concur.
Report per Rule 30(e).