IN THE MATTER OF: C.M.S.

No. COA07-108

(Filed 3 July 2007)

**1. Termination of Parental Rights— Americans with Disabilities Act—mental retardation**

Title II of the Americans with Disabilities Act (ADA) did not preclude the State from terminating respondent's parental rights even though respondent contends she is mentally retarded, be-

cause: (1) a parent may not raise violations of the ADA as a defense to termination of parental rights proceedings; (2) Congress enacted the ADA to eliminate discrimination against people with disabilities and to create causes of action for qualified people who have faced discrimination, but did not intend to change the obligations imposed by unrelated statutes; and (3) our state requires that any order placing or continuing the placement of a child in the custody of DSS must include findings that DSS has made reasonable efforts to prevent or eliminate the need for placement of the juvenile. ·

**2. Termination of Parental Rights— findings of fact—willfully leaving juvenile in foster care without reasonable progress—sufficiency of evidence**

Competent evidence supported the trial court's findings of fact in a termination of parental rights case, and the findings supported the termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(2) on the ground that respondent willfully left the juvenile in foster care more than 12 months without showing reasonable progress in correcting the conditions that led to the removal of the child from the home, because: (1) the trial court found the minor child had been in custody of DSS since 13 February 2004 through 27 October 2006, the date of the termination proceeding; (2) the trial court found that respondent has the capabilities to correct the conditions that led to the removal of the minor child, but has willfully failed to do so; and (3) clear, cogent, and convincing evidence was presented that respondent had completed a forensic psychological exam, but she had failed to follow through with any of the other required activities regarding parenting, therapy, anger management, or medication management.

Appeal by respondent from an order entered 27 October 2006 by Judge Kevin M. Bridges in Stanly County District Court. Heard in the Court of Appeals 4 June 2007.

*Mark T. Lowder for petitioner-appellee Stanly County Department of Social Services; Vita Pastorini for appellee Guardian ad Litem.*

*Janet K. Ledbetter for respondent-appellant.*

**IN RE C.M.S.**

[184 N.C. App. 488 (2007)]

HUNTER, Judge.

Donna S. ("respondent-mother") appeals the termination of her parental rights as to C.M.S. After careful consideration, we affirm.

At the age of five, C.M.S. lived with respondent-mother and respondent-mother's boyfriend, Roger Jernigan, Jr. ("Jernigan"). During her time living with them, on 11 February 2004, the evidence presented at the hearing tended to show the following: C.M.S. witnessed an incident wherein respondent-mother held a gun to someone's head and Jernigan stabbed two men. During the course of this incident, C.M.S. was injured when she was struck in the head by a third party with the butt of a gun. As a result of this affray, C.M.S. was taken into the custody of Stanly County Department of Social Services ("DSS") and placed in the Christian Foster Home where she remains to date. A trial court adjudicated C.M.S. abused and neglected on 8 July 2004.

After being placed in the foster home, C.M.S. disclosed to Stacey McCroskey ("McCroskey"), a DSS social worker, acts of sexual abuse committed by Jernigan against her. The acts included holding C.M.S. down, kissing her genitalia, kissing her on the mouth, inserting his tongue in her mouth, kissing her buttocks while she was undressed, and placing his finger inside her vagina. C.M.S. also had scarring in her vagina and notching to her hymenal ring consistent with sexual abuse.

On 29 October 2004, a second petition was filed by DSS alleging sexual abuse of C.M.S. by Jernigan. C.M.S. testified at this hearing regarding the acts by Jernigan. Dr. Conroy, who conducted the physical examination on C.M.S., corroborated much of C.M.S.'s testimony. C.M.S. also testified that she had informed respondent-mother about the sexual abuse, and that respondent-mother failed to protect her from those acts. On 14 July 2005, C.M.S. was adjudicated abused by the trial court for a second time.

On 18 November 2004, respondent-mother entered into an out-of-home family service agreement in which she agreed to: (1) locate appropriate, safe housing; (2) have a stable source of income adequate to meet all needs; (3) provide proof the utility and rent bills are being met each month; (4) have no contact with Jernigan; (5) allow no contact between Jernigan and C.M.S. and have no conversations with C.M.S. about Jernigan; (6) complete a series of parenting classes; (7) participate in anger management treatment and follow through with

**IN RE C.M.S.**

[184 N.C. App. 488 (2007)]

any recommended medication and therapy programs; (8) maintain regular contact with McCroskey; and (9) have regular supervised weekly visitation with C.M.S. An additional out-of-home family services agreement was entered into by respondent-mother on 11 February 2006 that again barred contact between her and Jernigan and required her to complete a psychological evaluation.

At the permanency planning hearing held on 3 March 2005, the trial court found that respondent-mother had made some progress toward achieving the permanent plan of reunification. On 14 July 2005, however, C.M.S. was adjudicated an abused juvenile because respondent-mother failed to supervise and stop the sexual abuse by Jernigan.

On 15 December 2005, the trial court entered an order changing C.M.S.'s permanent plan from reunification with respondent-mother to adoption and ordered DSS to file a petition terminating respondent-mother's parental rights. Respondent-mother's parental rights were terminated on 27 October 2006 after a five day hearing. The findings made by the trial court relative to the disposition of this appeal are discussed below.

Respondent-mother presents, in essence, two issues for this Court's review: (1) whether Title II of the Americans with Disabilities Act ("ADA" or "Act") precludes the state from terminating appellant's parental rights, and (2) whether the trial court's findings of fact were supported by competent evidence.

This Court's review of a trial court's order terminating parental rights involves two inquiries: Whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and whether those findings support its conclusions of law. *In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996). A finding by the trial court of any one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111 is sufficient to support an order of termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990).

I.

**[1]** Respondent-mother first argues the ADA precludes the State from terminating her parental rights because she is mentally retarded. This is an issue of first impression for this Court, and after careful review we hold that the ADA does not prevent the termination of parental rights in the instant case. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USCS § 12132 (2003).

In this case, respondent-mother argues that the ADA requires the state to make reasonable accommodations and provide services to assist a person with mental retardation to exercise their constitutionally protected parental rights. A similar argument was advanced in *In re Terry*, 610 N.W.2d 563, 569 (Mich. Ct. App. 2000). While the *In re Terry court* first concluded that "mental retardation is a 'disability' within the meaning of the ADA," it then agreed with the "[s]everal courts [that] have concluded that termination proceedings are not 'services, programs or activities' under the ADA, and the ADA does not apply in termination proceedings as a defense to the termination of parental rights." *Id.* (citing 28 C.F.R. 35.104; *In re Antony B.*, 735 A.2d 893, 899 (Conn. App. Ct. 1999); *State in Interest of B.K.F.*, 704 So.2d 314, 317-18 (La. Ct. App. 1997); *In re B.S.*, 693 A.2d 716, 720 (Vt. 1997); *Stone v. Daviess Co. Div. Child Serv.*, 656 N.E.2d 824, 829-30 (Ind. Ct. App. 1995); *In Interest of Torrance P.*, 522 N.W.2d 243, 245 (Wis. Ct. App. 1994)); *see also People ex rel. v. T.B.*, 12 P.3d 1221, 1223 (Colo. Ct. App. 2000). Accordingly, the *In re Terry* court held that "a parent may not raise violations of the ADA as a defense to termination of parental rights proceedings." *In re Terry*, 610 N.W.2d at 570.

The majority of jurisdictions have adopted the following reasoning for this rule: "Congress enacted the ADA to eliminate discrimination against people with disabilities and to create causes of action for qualified people who have faced discrimination. *See* 42 U.S.C. § 12101(b). Congress did not intend to change the obligations imposed by unrelated statutes." *In re Torrance P.*, 522 N.W.2d at 246; *see also Stone*, 656 N.E.2d at 829-30; *In re B.S.*, 693 A.2d at 720; *In re Anthony P.*, 101 Cal. Rptr. 2d 423, 425 (Cal. Ct. App. 2000) (noting that an all-states search for authority as to this issue established complete agreement amongst the jurisdictions that termination proceedings are not services, programs, or activities within the meaning of title II of the ADA). We agree with the majority of jurisdictions and adopt this rule of law.

The *In re Terry* court, however, did hold that Michigan's Family Independence Agency ("FIA") must comply with the ADA. *In re Terry*, 610 N.W.2d at 570. Under Michigan law, a "court must determine whether the FIA has made 'reasonable efforts' to rectify the conditions that led to its involvement in the case." *Id.* This requirement,

the court held, put FIA in compliance with the ADA's directive that disabilities be reasonably accommodated. Similarly, our state requires that "[a]ny order placing or continuing the placement of a child in the custody of the department of social services must include findings that the department of social services 'has made reasonable efforts to prevent or eliminate the need for placement of the juvenile.'" *In re Dula*, 143 N.C. App. 16, 19, 544 S.E.2d 591, 593 (2001) (quoting N.C. Gen. Stat. § 7B-507(a)(2) (1999)). The court made such a finding in this case. Thus, the ADA does not prevent the state from terminating respondent-mother's parental rights in this case. Respondent-mother's assignment or error as to this issue is overruled.

II.

**[2]** The trial court terminated respondent-mother's parental rights on grounds found in N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), and (a)(6). Under N.C. Gen. Stat. § 7B-1111(a)(1) (2005), parental rights may be terminated when a trial court finds that "[t]he parent has abused or neglected the juvenile." *Id.* Under N.C. Gen. Stat. § 7B-1111(a)(2), rights may be terminated upon a finding that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing . . . that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." This finding may not be made, however, solely because the parent was impoverished. *Id.* Under N.C. Gen. Stat. § 7B-1111(a)(6), the trial court may terminate parental rights upon a finding "[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile" and will be unable to do so in the foreseeable future because of, *inter alia*, mental illness or mental retardation. *Id.*

Respondent-mother challenges nearly every finding of fact made by the trial court in reaching its decision to terminate her parental rights under the three statutes referenced above. As previously stated, however, a finding by the trial court of any one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111 is sufficient to support an order of termination so long as that conclusion of law is supported by findings of fact which are in turn supported by clear, cogent, and convincing evidence. *In re Taylor*, 97 N.C. App. at 64, 387 S.E.2d at 233-34; *In re Allred*, 122 N.C. App. at 565, 471 S.E.2d at 86. Because we find that the trial court made sufficient findings of fact which were supported by clear, cogent, and convincing evidence as to N.C. Gen. Stat. § 7B-1111(a)(2), we limit our discussion to that issue.

N.C. Gen. Stat. § 7B-1111(a)(2) permits termination of parental rights if the "parent has willfully left the juvenile in foster care . . . for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." *Id.* To terminate rights on this ground, the court must determine two things: (1) whether the parent willfully left the child in foster care for more than twelve months, and if so, (2) whether the parent has not made reasonable progress in correcting the conditions that led to the removal of the child from the home. *In re O.C. & O.B.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

"A finding of willfulness does not require a showing of fault by the parent." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Voluntarily leaving a child in foster care for more than twelve months or a failure to be responsive to the efforts of DSS are sufficient grounds to find willfulness. *Id.* at 440, 473 S.E.2d at 398. Similarly, a parent's prolonged inability to improve his or her situation, despite some efforts and good intentions, will support a conclusion of lack of reasonable progress. *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004).

In the instant case, findings of fact nos. 18, 34, 49, 50, 51, 52, 53, 56, and 57 all relate to a finding of willfulness and/or reasonable progress. Respondent-mother challenges each of these findings of fact on the grounds that they are not supported by clear, cogent, and convincing evidence.

At the outset we note that the trial court made a conclusion of law that respondent-mother had willfully left C.M.S. in foster care for more than twelve months without showing reasonable progress in correcting those conditions that led to the child's placement in foster care. We further note that this conclusion of law is adequately supported by findings of fact. Specifically, the trial court found that C.M.S. had been in custody of DSS since 13 February 2004 through 27 October 2006, the date of the termination proceeding. This satisfies the twelve month requirement in N.C. Gen. Stat. § 7B-1111(a)(2). As to whether the mother made reasonable progress, the trial court found:

34. That the Respondent biological mother has been certified as a member of the Willie M. Class, and has a longstanding pattern of impulsive and rebellious behavior. That she has been diag-

nosed with Intermittent Explosive Disorder and *has failed to follow through with treatment or benefit from any such treatment provided.*

. . .

52. . . . That the Respondent biological mother has not acquired, provided or maintained a stable home or residence for placement of the Juvenile, and has failed to complete said activity as addressed in the . . . Out of Home Family Services Agreement.[1]

. . .

56. That since the removal on the Juvenile from her custody of February 13, 2004, the Respondent biological mother has attended four (4) different mental health care centers . . . to receive mental health treatment and to Court ordered anger management and parenting classes. That the Respondent biological mother has not completed or been discharged from a mental health care center's recommended therapy, or from Court ordered anger management treatment and parenting classes. That the Respondent biological mother has failed to complete mental health care treatment, specifically individual counseling, group counseling, anger management treatment and parenting classes, has failed to offer any reason to this Court, at any point in time, for her failure to complete this mental health care treatment, and has failed to complete said activity as addressed in the aforementioned Out of Home Family Services Agreement.

(Emphasis added.) Finally, in finding of fact no. 57, the trial court concluded that respondent-mother has the capabilities to correct the conditions that led to the removal of C.M.S. but has willfully failed to do so. Having determined that the trial court's conclusion of law relating to willful abandonment is supported by the findings of fact we may now turn to respondent-mother's argument: That the findings of fact are not supported by clear, cogent, and convincing evidence. We disagree.

Evidence presented at the termination hearing included McCroskey's testimony that the court relieved DSS from reunification efforts with respondent-mother on 15 December 2005, but that she had been involved with the case since its inception on 13 February

---

1. The details of this agreement are discussed in the fact section above.

IN RE C.M.S.

[184 N.C. App. 488 (2007)]

2004. McCroskey had supervised C.M.S. while she was in foster care and had developed all of the family services case plans with respondent-mother with the goal and objective of creating a safe home environment for C.M.S. McCroskey testified further that the behaviors respondent-mother needed to address prior to regaining custody of C.M.S. were her explosive behaviors and her need to display appropriate parenting skills. McCroskey also testified that she explained every item of the family services case plan to respondent-mother in such a way so that it would be easy to understand, and that respondent-mother was informed that she could call McCroskey anytime should she need clarification of the services being provided to her. In summation, McCroskey made a notation on 14 October 2005 that respondent-mother had completed the forensic psychological exam, but she had failed to follow through with any of the other activities regarding parenting, therapy, anger management, or medication management. We hold this to be clear, cogent, and convincing evidence that respondent-mother violated N.C. Gen. Stat. § 7B-1111(a)(2). Accordingly, we reject respondent-mother's assignments of error as to this issue.

### III.

In summary, we hold that the ADA does not bar this state from terminating respondent-mother's parental rights in this case and that the trial court did not err in terminating respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). We have reviewed respondent-mother's remaining arguments and find them to be without merit.

Affirmed.

Chief Judge MARTIN and Judge BRYANT concur.