IN THE MATTER OF: J.W.H.
No. COA07-1126
North Carolina Court of Appeals
Filed January 15, 2008
This case not for publication
Holland & O'Connor, by Jennifer S. O'Connor and W.A. Holland, Jr., for Petitioner-Appellee Johnston County Department of Social Services.
Richard Croutharmel, for Respondent-Appellant.
Sherry M. Morris, for Respondent-Appellee.
Pamela N. Williams, for Guardian ad Litem.
ARROWOOD, Judge.
Respondent, who is the mother of minor child J.W.H., appeals from an order terminating her parental rights. We affirm the order of termination.
Respondent, her daughter E.S., and son T.S. moved from Alabama to Johnston County, North Carolina in the late 1990s. Respondent married M.H. in 2001 and J.W.H. was born of the marriage in 2003. The Johnston County Department of Social Services (DSS) has been involved with the family since 1998 to address concerns of improper discipline, domestic violence and parenting skills. In January of 2005, DSS referred respondent and M.H. to Dr. Robert Aiello for a psychological evaluation. Respondent was diagnosed with mild mental retardation and had an I.Q. of 59. M.H. was diagnosed with mild mental retardation, dysthymia and had an I.Q. of 58. Dr. Aiello recommended one on one parenting instruction.
In March of 2005, respondent and M.H. contacted DSS and indicated that they were having a difficult time with J.W.H. and his older siblings, who were diagnosed with ADHD. DSS determined that the older siblings were receiving improper discipline and improper dosage of medication. DSS provided the family with services, including Intensive Family Preservation in the home and parenting classes. Respondent voluntarily placed E.S. with a relative. After receiving reports, DSS substantiated a claim that respondent had over medicated T.S. in December of 2005. DSS subsequently placed T.S. and J.W.H. in foster care and filed a juvenile petition alleging neglect and dependency.
By order filed 6 February 2006, the trial court adjudicated J.W.H. and T.S. neglected and dependent pursuant to respondent and M.H.'s consent. In its disposition order, the trial court found that since the juveniles' placement, DSS "has developed a[n] in home family services agreement to address parenting, mental health and employment." Further, DSS "has offered one on one guidance and support as well as developed a visitation plan to maintain and strengthen the parent-child relationship[.]" The trial court ordered respondent and M.H. to cooperate with DSS. Once in the custody of DSS, it was determined that J.W.H. and T.S. had severe dental problems. The trial court conducted a 90-day review hearing on 15 February 2006. By permanency planning order filed 19 June 2006, the trial court found that reasonable efforts were made to prevent removal in that DSS had worked with the family extensively dating back to 2002. The trial court further found that DSS had (1) referred the family to the Johnston County Mental Health Center, Carolina Counseling, Work First, Crises Assistance, low income housing, Social Security Administration, psychological evaluation, Family Pride Parenting Program, HALT, Harbor and parenting classes; (2) placed intensive family preparation services in the residence on at least three separate occasions; and (3) developed numerous safety assessments and service agreements. The trial court found that Mr. and Mrs. H. were beginning to address the issues in their out of home services agreement, but they failed to demonstrate on a consistent basis knowledge gained by various service providers, and therefore, concluded it would not be in the juveniles' best interest to return to the custody of respondent and M.H. The trial court found that DSS had exercised reasonable efforts towards reunification and ordered DSS to continue to make reasonable efforts toward reunification, as the permanent plan of reunification was in the juveniles' best interest.
By permanency planning order filed 29 November 2006, the trial court found that social worker Tony Harris had "not observed such an improvement in the parenting abilities which would resolve the protective issues if the children were returned home." The trial court also found that "[t]here [were] no other services or programs that have not already been implemented which would benefit Mr. and Mrs. H as all known programs over an extensive period of time have been exhausted." Further, "reasonable efforts were made to finalize the child's permanent plan of reunification, that is in effect since the last permanency planning hearing. The Court finds it would be in the juveniles' best interest to change the permanent plan to custody with a court approved caretaker." The trial court found that "[a]lthough the JCDSS has worked extensively with Mr. and Mrs. H since 2002, neither individual is able to demonstrate [an] ability to provide on a consistent and sustained period . . . proper care and supervision for the children which would be in their best interests and welfare." The trial court entered another permanency planning order on 20 December 2006. The trial court found and concluded that the best permanent plan was custody/guardianship for T. S. and adoption for J.W.H.
On 20 February 2007, DSS filed a petition to terminate the parental rights of respondent and M.H. as to minor child J.W.H. DSS alleged that grounds existed to terminate respondent's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1)(neglect); N.C. Gen. Stat. § 7B-1111 (a)(2) (willfully left the child in foster care or placement outside the home); and N.C. Gen. Stat. § 7B-1111 (a)(6) (incapable of providing proper care and supervision as a result of mental retardation, mental illness, organic brain syndrome or substance abuse). The trial court concluded that grounds for termination of respondent's parental rights existed under N.C. Gen. Stat. § 7B-1111(a)(1) and (a)(2). The trial court further concluded that it was in the minor child's best interest to terminate respondent's parental rights. The trial court also terminated the parental rights of M.H., who does not appeal. Respondent appeals.
Respondent first contends the trial court's termination of her parental rights violated the Americans with Disabilities Act (ADA). This Court, however, recently decided this issue against respondent.
In re C.M.S., ___ N.C. App. ___, 646 S.E.2d 592, 595 (2007), disc. review denied, ___ N.C. ___, ___ S.E.2d ___ (filed Nov. 8, 2007), we held that the ADA did not prevent the termination of the mother's parental rights. This Court noted that while "'mental retardation is a 'disability' within the meaning of the ADA . . . [s]everal courts [] have concluded that termination proceedings are not 'services, programs or activities' under the ADA, and the ADA does not apply in termination proceedings as a defense to the termination of parental rights.'" Id. at ___ N.C. App. ___, 646 S.E.2d at 595 (citing In re Terry, 240 Mich. App. 14, 610 N.W.2d 563, 569 (2000)). In accordance with Terry, we concluded that if the State has made "reasonable efforts" to correct the conditions that initiated the State's involvement, the State properly satisfies the ADA's requirement for reasonably accommodating disabilities. Id.
Like In re C.M.S., the trial court here made such a finding in this case. The evidence showed that DSS arranged for intensive family preservation to prevent J.W.H.'s removal. After J.W.H.'s placement, DSS referred the parents to Johnston County Mental Health Center and Family Pride, among other services. In its permanency planning orders of June and November, the trial court found that DSS had made reasonable efforts towards reunification. Further, the court found that "there were no further services or programs available to the parents that . . . had not [been] previously utilized and exhausted." Thus, DSS provided reasonable effort and the ADA did not prevent the trial court from terminating respondent's parental rights.
Respondent next contends that the trial court erred in terminating her parental rights based upon willfully leaving the child in placement outside the home for more than twelve months. Respondent asserts the court's findings of fact were not supported by the evidence and that, in turn, the findings do not support this conclusion of law. We disagree.
Termination of parental rights involves a two-stage process. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). "If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." Id. at 98, 564 S.E.2d at 602. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. Id.
In considering the ground for termination under N.C. Gen. Stat. § 7B-1111(a)(2) (2005), the trial court must go through a two-part analysis and determine: (1) that a child has been willfully left by the parent in foster care or placement outside the home for over 12 months; and (2) as of the time of the hearing, that the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. In re O.C. & O.B., 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005). Willfulness under this section means something less than willful abandonment, and "does not require a showing of fault by the parent." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996) (citation omitted).
Here, the court found that: (1) J.W.H. had been removed in December of 2005 and had been in foster care consistently for more than seventeen months; (2) respondent was ordered to cooperate with DSS; (3) since J.W.H.'s removal, the parents have moved on several occasions and had been evicted for failure to pay rent; (4) respondent was currently employed at two jobs: working from 4:00 p.m. to 8:00 p.m. at one job, then 8:30 p.m. to 12:00 a.m. at the other; (5) the parents had not been able to demonstrate an ability to maintain a home free from protective issues despite DSS having provided extensive services and programs; (6) respondent was not able to demonstrate any knowledge gained for a sustained period of time, particularly without constant supervision and intervention by DSS; (7) the parents have made only a slight improvement in resolving the protective issues in their home; (8) there was no showing that the progress made by the parents were reasonable under the circumstances; and (9) "all available services have been provided to the parents."
A review of the record and transcript shows the trial court's findings are based upon orders and reports entered in the case, and testimony from DSS social worker Tony Harris, Guardian ad Litem volunteer Ann Holmes and respondent. The findings of fact show that respondent has an IQ of 59; that she has been diagnosed as mildly mentally retarded, and that despite DSS's intensive intervention, respondent has been unable to demonstrate the parenting skills needed to care for J.W.H. without constant supervision. We hold that these findings of fact support the trial court's conclusion that grounds existed to terminate respondent's parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) (2005).
Having concluded that one ground for termination of parental rights exists, we need not address the additional ground found by the trial court. See In re Brim, 139 N.C. App. 733, 743, 535 S.E.2d 367, 373 (2000).
Finally, respondent contends the trial court erred by concluding that termination of her parental rights was in the best interests of J.W.H. Respondent challenges the trial court's reliance on J.W.H.'s dental services he received once he was in foster care. In determining whether terminating the parent's rights is in the juvenile's best interest, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110 (2005).
Here, to support its determination that it was in the best interests of the children to terminate respondent's parental rights, the trial court made the following findings:
39. The Court further finds as a fact that it is in the child's best interest that the parental rights of the mother and father be terminated as the juvenile has made great progress while in foster care. At the time of the juvenile's placement in foster care, the child was in dire need of dental intervention, which the parents did not provide. While in foster care, the child has received said dental services, including but not limited [to] surgery, to correct his rotten teeth.
40. The court finds pursuant to N.C.G.S. 7B-1110, that the juvenile is approximately three years old. The [c]ourt finds that the juvenile is in an adoptive placement and there is a likelihood that the juvenile will be adopted. The Court further finds that termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile. While the juvenile has shown a bond with the mother, due to the interactions at visitations, the child has not demonstrated a bond with the father. The juvenile is bonded with the prospective adoptive parents. The court finds that it is the opinion of both the social worker, Tony Harris and the Guardian ad Litem Program Coordinator, Ann Holmes, based upon their experience and interaction with the child; that the parental rights in and to the child should be terminated as the child is in need of permanence that he cannot receive from either parent. The juvenile is in need of stability in a safe, stable and nurturing environment, with proper care and supervision which can be obtained through adoption.
A review of the record reveals that the trial court's findings are supported by testimony from social worker Tony Harris and Guardian Ad Litem Ann Holmes. In light of the evidence presented during the termination proceedings and discussed above, we are unable to conclude that the trial court's determination that terminating the parental rights of respondent was in the best interests of J.W.H is arbitrary or manifestly unsupported by reason. Therefore, this assignment of error is overruled.
We affirm the trial court's order terminating respondent's parental rights to her child, J.W.H.
Affirmed.
Judges McGEE and HUNTER concur.
Report per Rule 30(e).