An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1107

Filed 3 September 2025

Union County, No. 20JT000094-890

IN THE MATTER OF: O.G.-B.

Appeal by Respondent-Father from Order entered 3 October 2024 by Judge Erin Hucks in Union County District Court. Heard in the Court of Appeals 10 June 2025.

> *Union County Division of Social Services, by Marc S. Gentile, for Petitioner Union County Division of Social Services.*

> *Parent Defender Wendy C. Sotolongo, by Deputy Parent Defender Annick Lenoir-Peek, for Respondent-Appellant Father.*

> *Alston & Bird LLP, by Matthew P. McGuire, for Guardian ad litem.*

HAMPSON, Judge.

**Factual and Procedural Background**

Respondent-Father appeals from an Order terminating his parental rights to Opal.[1] The Record before us tends to reflect the following:

Opal, the minor child, was born to Mother[2] and Respondent-Father on 11 March 2022. On 12 March 2022, Union County Division of Social Services (DSS) received a report from the hospital staff alleging the parents "did not appear to be doing well with the baby" and would ignore the child while she was crying. The report also alleged Respondent-Father had previously committed domestic violence against Mother, and Mother had issues with substance abuse. Because of additional concerns about Mother's mental health, DSS arranged a safety plan with the parents in which Opal would not be left alone with Mother but would always be supervised by Respondent-Father or Opal's paternal grandmother.

On 13 May 2022, DSS received a report that Mother was living alone with Opal in violation of the safety plan. DSS immediately filed a Petition alleging Opal was a neglected and dependent juvenile. That same day, DSS was granted nonsecure custody of Opal. After an adjudication and disposition hearing on 19 July 2022, the trial court adjudicated Opal neglected and dependent. The trial court found Respondent-Father had "pending charges regarding illegal substances[,]" and there was a history of domestic violence in the parents' relationship. The trial court noted Respondent-Father had taken a substance use assessment and the results were

---

[1] A pseudonym agreed upon by the parties.
[2] Mother is not party to this appeal.

"clean". Respondent-Father had also taken a domestic violence assessment and was set to begin domestic violence prevention classes as well as parenting classes.

At the 27 September 2022 permanency planning hearing, the trial court found Respondent-Father was "working on his plan with DSS" and had been taking domestic violence prevention classes and parenting classes as instructed. The trial court adopted a primary plan of reunification and a secondary plan of guardianship for the minor child. The trial court found both parents were "making adequate progress within a reasonable period of time under the plan." The trial court ordered Respondent-Father to continue cooperating with DSS and taking classes.

A second permanency planning hearing was held on 20 December 2022. The trial court again found Respondent-Father was "actively working on his case plan" and had completed his parenting classes but had not completed the domestic violence prevention classes because he could not afford the cost. The trial court also noted a DSS social worker had witnessed the parents have "an altercation in the hallway" during court, and Mother had indicated Respondent-Father was "emotionally abusive".

A third permanency planning hearing was held on 12 September 2023. The trial court found visitation between the parents and the minor child had begun to deteriorate: the parents had been having "arguments during the visits" and Respondent-Father "missed several visits or has arrived late or left early since the last court date." The trial court also noted there continued to be domestic violence

between the parents despite Respondent-Father having completed his domestic violence prevention classes. The trial court described an incident between the parents where Mother "smeared bodily fluids" on Respondent-Father because she believed he was cheating on her, and Respondent-Father punched Mother in the face in response.

The trial court also found that Respondent-Father had "needs" to be addressed in the areas of "substance use, housing and parenting." The trial court observed Respondent-Father had "been arrested several times for drug related charges[ ]" since his initial substance use assessment. DSS had requested Respondent-Father obtain a reassessment "due to these charges[ ]" but Respondent-Father "refused." The trial court found the parents were no longer making adequate progress within a reasonable period of time under the plan and were "acting in a manner inconsistent with the health or safety of the juvenile." The minor child's primary plan was changed to adoption, with a secondary plan of guardianship. The trial court additionally determined that visitation was no longer in the best interest of the child.

On 13 October 2023, DSS filed a Petition to Terminate Parental Rights. An Amended Petition was filed on 21 December 2023. A hearing on the Petition was set for 31 July 2024. However, Mother's Guardian *ad litem* was absent on the date of the hearing, so the trial court held another permanency planning review hearing. The trial court did not find any progress on the part of either parent. Respondent-Father had eventually complied with DSS' request he obtain a second substance use

assessment but had not fully disclosed his drug-related criminal history and pending charges to the assessor. As such, the trial court ordered Respondent-Father to obtain a third substance use assessment and "disclose his criminal history and current charges related to substances." The trial court further noted Respondent-Father was living in a motel with Mother and "this is not appropriate housing [for the minor child]."

A hearing on the Petition to Terminate Parental Rights was held on 3 September 2024. The evidence presented at trial included testimony from DSS social worker Amanda Shelton (SW Shelton) and the minor child's Guardian *ad litem*. Respondent-Father also testified.

Based on the evidence presented, the trial court found grounds existed to terminate both parents' parental rights in Opal under N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (6). The trial court's Order was entered on 3 October 2024. On 9 October 2024, Respondent-Father timely filed Notice of Appeal.

## Issues

The issue on appeal is whether the trial court properly concluded grounds existed to terminate Respondent-Father's parental rights in the minor child pursuant to N.C. Gen. Stat. § 7B-1111(a).

## Analysis

Respondent-Father contends the trial court erred in determining grounds existed to terminate his parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), (2),

and (6). "[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53 (2019) (citations omitted).

"At the adjudicatory stage of a termination of parental rights hearing, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists." *In re O.J.R.*, 239 N.C. App. 329, 332, 769 S.E.2d 631, 634 (2015) (citations omitted); *see also* N.C. Gen. Stat. § 7B-1109(f) (2023). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (citation and quotation marks omitted). Likewise, "[u]nchallenged findings are deemed to be supported by the evidence and are binding on appeal." *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020) (citation and quotation marks omitted). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58-59 (2019) (citation omitted). We review the trial court's conclusions of law *de novo*. *In re B.S.O.*, 234 N.C. App. 706, 708, 760 S.E.2d 59, 62 (2014) (citation omitted).

Respondent-Father challenges the trial court's adjudication of willful failure to make reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(2). Section 7B-1111(a)(2) authorizes the termination of parental rights if "[t]he parent has willfully

left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2023).

"To terminate rights [under N.C. Gen. Stat. § 7B-1111(a)(2)], the court must determine two things: (1) whether the parent willfully left the child in foster care for more than twelve months, and if so, (2) whether the parent has not made reasonable progress in correcting the conditions that led to the removal of the child from the home." *In re C.M.S.*, 184 N.C. App. 488, 494, 646 S.E.2d 592, 596 (2007) (citation omitted). "In the context of Section 7B-1111(a)(2), willfulness means something less than willful abandonment, which involves purpose and deliberation." *In re K.J.D.*, _ N.C. App. _, _, 909 S.E.2d 795, 799 (2024) (citing *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995)). "Voluntarily leaving a child in foster care for more than twelve months or a failure to be responsive to the efforts of DSS are sufficient grounds to find willfulness." *In re C.M.S.*, 184 N.C. App. at 494, 646 S.E.2d at 596 (citation omitted). "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *In re Nolen*, 117 N.C. App. at 699, 453 S.E.2d at 224. "Similarly, a parent's prolonged inability to improve his or her situation, despite some efforts and good intentions, will support a conclusion of lack of reasonable progress." *In re C.M.S.*, 184 N.C. App. at 494, 646 S.E.2d at 596 (citation omitted).

"A parent's failure to fully satisfy all elements of the case plan goals is not the equivalent of a lack of 'reasonable progress.' " *In re J.S.L.*, 177 N.C. App. 151, 163, 628 S.E.2d 387, 394 (2006) (citing N.C. Gen. Stat. § 7B-1111(a)(2) (2005)). However, " 'parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)' provided that 'the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home.' " *In re T.M.L.*, 377 N.C. 369, 379, 856 S.E.2d 785, 793 (2021) (quoting *In re B.O.A.*, 372 N.C. 372, 384, 831 S.E.2d 305, 313-14 (2019)).

Here, the minor child was placed in DSS custody on 13 May 2022. At the time of the termination hearing on 3 September 2024, Opal had been in foster care for over two years. At the hearing, the trial court found Respondent-Father had "not engaged in services to address identified needs," and made comprehensive Findings in the areas of "substance use," "parenting skills," "family relationships," and "housing."

As to substance use, the trial court found Respondent-Father had "submitted to two separate [substance use] assessments and there were no recommendations[,]" but "failed to inform the assessor that [he] has been in prison for drug related charges, so he has a history with illegal substances and has numerous pending drug related charges, including possession of marijuana, possession of cocaine and possession with intent to sell and deliver cocaine." The trial court also found Respondent-Father had

obtained three separate drug-related criminal charges during the life of the case and had "numerous pending drug related charges."

Respondent-Father challenges these Findings, arguing he "answered all questions put to him during the assessments fully and truthfully." However, SW Shelton testified at the termination hearing that Respondent-Father did not tell the assessor that he had been previously incarcerated and had pending charges for drug-related offenses. Respondent-Father further argues he did not have sufficient time to obtain a third substance use assessment between the time the trial court entered its order directing him to obtain a third assessment—20 August 2024—and the termination hearing on 3 September 2024. However, Respondent-Father knew he was responsible for complying with his case plan and undergoing a substance use assessment as early as June 2022. Thus, while Respondent-Father may have lacked sufficient time to obtain a third assessment between the entry of the trial court's 20 August 2024 order and the termination hearing, he had over two years to fully disclose his history of drug-related charges.

Respondent-Father also argues there was no evidence he used drugs or was addicted to illegal substances, and the trial court's Findings as to his "substance use" are irrelevant to Opal's welfare. However, the trial court did not find Respondent-Father used drugs—it found Respondent-Father "has a history with illegal substances and he has numerous pending drug related charges". Indeed, the Record shows Respondent-Father was arrested multiple times on drug-related charges

between the time Opal entered DSS custody and the termination hearing. Moreover, this Court has noted a finding that a parent has pending criminal charges is relevant to determining whether the parent is creating an acceptable and safe living environment. *See In re H.D.*, 239 N.C. App. 318, 324, 768 S.E.2d 860, 864 (2015) ("These findings, particularly the pending criminal charges, all indicated repeated failures at creating an acceptable and safe living environment certainly suggest that reunification efforts would be futile." (citation and quotation marks omitted)). As such, we disagree with Respondent-Father that his criminal charges do not relate to his ability to care for Opal.

Next, Respondent-Father challenges the trial court's Findings as to his parenting skills. Specifically, Respondent-Father challenges Finding 16(C)(1)(b)(ii), which states:

> [Respondent-Father] has allowed [Mother] to care for the juvenile outside of his sight during visits with the juvenile even while she was having a mental health crisis, to the point that this court found that it was not in the best interest of the juvenile to continue to visit with [Respondent-Father] and [Mother].

At the hearing, SW Shelton testified that during visits with Opal, Respondent-Father and Mother would "mostly stay separate," "were argumentative with each other[,]" and Respondent-Father "would defer to [Mother], because she would become upset if he was in the room while she would change diapers." SW Shelton also testified, and the 28 September 2023 permanency planning review order shows, visitation between

the parents and minor child was stopped in September 2023. This evidence is competent to support the trial court's Finding.[3]

Respondent-Father also challenges the trial court's Findings as to his family relationships. The trial court found Respondent-Father completed domestic violence prevention classes, but "there continues to be domestic violence in the relationship between" Respondent-Father and Mother. Respondent-Father argues there is no evidence he has continued to commit domestic violence against Mother.

The Record shows there has been at least one incident of domestic violence between the parents since Respondent-Father completed his domestic violence prevention classes; this incident was discussed at the hearing and is described in DSS' 8 September 2023 Court Summary and the trial court's 28 September 2023 permanency planning review order.[4] Additionally, SW Shelton testified there were at least two other incidents between the parents where law enforcement was called and Mother reported that Respondent-Father had hit her. This evidence is competent

---

[3] Respondent-Father also argues the trial court abused its discretion in "failing to continue visitation between [Respondent-Father] and [Opal] where [Mother] was not present." As Respondent-Father concedes, review of that order is outside the scope of this appeal. Moreover, we note "[a]n order that . . . continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, *including no visitation*." N.C. Gen. Stat. § 7B-905.1(a) (2023) (emphasis added).

[4] Respondent-Father argues he was acting in self-defense during this incident. We decline to adjudicate whether Respondent-Father was acting in self-defense or used excessive force, as that issue is outside the scope of this appeal. Moreover, there is sufficient evidence of multiple other incidents of domestic violence perpetrated by Respondent-Father against Mother which support the trial court's Finding.

to support the trial court's Finding that there continues to be domestic violence in the relationship.

Lastly, Respondent-Father challenges the trial court's Finding that "there is no evidence" Respondent-Father's new apartment is appropriate. The trial court found, and Respondent-Father concedes, Respondent-Father had "unstable housing" throughout the case. Respondent-Father testified he had secured an apartment within three days prior to the termination hearing. However, the trial court noted it did not have "any evidence as to whether that apartment is appropriate or any information beyond the fact that [Respondent-Father] does have a lease for a two-bedroom apartment." Respondent-Father argues "the little evidence available" shows his apartment is appropriate, but the trial court heard no evidence about the apartment other than that it has two bedrooms; thus, we cannot agree with Respondent-Father that the trial court's Finding that it lacked evidence as to whether the apartment is "appropriate" is unsupported by the evidence.

Here, the trial court's Findings of Fact support the Conclusion that Respondent-Father did not make reasonable progress to correct the conditions that led to the removal of the minor child from his care and that his failure to do so was willful. *See In re Bishop*, 92 N.C. App. 662, 669, 375 S.E.2d 676, 681 (1989) (upholding termination of mother's parental rights while acknowledging her "contentions that her inability to improve her situation stems from her mental disability, her poverty, and other personal problems"). Opal was adjudicated neglected and dependent based

on domestic violence between Respondent-Father and Mother. Respondent-Father's involvement with substance use and unstable housing became concerns raised by DSS shortly thereafter. *See In re B.O.A.*, 372 N.C. at 381, 831 S.E.2d at 311 ("[N]othing in the relevant statutory language suggests that the only 'conditions of removal' that are relevant to a determination of whether a particular parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) are limited to those which are explicitly set out in a petition seeking the entry of a nonsecure custody order or a determination that a particular child is an abused, neglected, or dependent juvenile.").

The Findings demonstrate that although Respondent-Father completed domestic violence prevention classes, domestic violence remained ongoing in the parents' relationship. Further, although Respondent-Father had undergone two substance use assessments, he had not been fully truthful with the assessor at either of them. Moreover, Respondent-Father had been indicted on at least three drug charges since Opal had been taken into DSS custody and had other charges pending. The trial court's Findings also establish that Respondent-Father had unstable housing throughout the case, and the trial court lacked sufficient information about Respondent-Father's current living situation to determine his apartment was safe and appropriate. Thus, these Findings support the trial court's Conclusion that Respondent-Father failed to make reasonable progress in addressing the conditions that led to the juvenile's removal. Therefore, the trial court did not err in concluding

Respondent-Father's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).[5]

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Order terminating Respondent-Father's parental rights in Opal.

AFFIRMED.

Judges STROUD and GORE concur.

Report per Rule 30(e).

---

[5] Because we conclude this ground has ample support in the trial court's Findings, we need not address Respondent-Father's arguments as to the remaining termination grounds found by the trial court under N.C. Gen. Stat. § 7B-1111(a)(1) and (6). *See In re E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 53 (citations omitted).